**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

JERMAINE COLLINS,

      Petitioner,

v.                                      Case No. 8:13-cv-3031-T-36TBM

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

Petitioner Jermaine Collins, a Florida prisoner proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Dkt. 1.) He challenges a judgment entered by the Circuit Court for the Sixth Judicial Circuit, in and for Pinellas County, Florida, in 2007. Respondent agrees that the petition is timely filed. (Dkts. 10, 11.) Collins filed a reply. (Dkt. 22.) Upon review, the petition must be denied.

## PROCEDURAL HISTORY

A jury convicted Collins of one count of attempted robbery with a firearm. (Dkt. 16, Ex. 1A, p. 46.) The trial court imposed a sentence of thirty years in prison as a habitual felony offender. (Dkt. 16, Ex. 1C, p. 229.) The state appellate court *per curiam* affirmed Collins' conviction and sentence. (Dkt. 16, Ex. 2, Opinion.) Collins filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which the state court summarily denied. (Dkt. 16, Exs. 3A, 3C.) The state appellate court *per curiam* affirmed the order of denial. *Collins v. State*, 124 So.3d 923 (Fla. 2d DCA 2013) (table).

## FACTS[1]

On the afternoon of September 21, 2006, Cassandra Frank was driving in St. Petersburg, Florida, to meet a friend.  Frank stopped at the Shady Side Market to get drinks for her two young children, who were in the car with her.   Inside the store, a man in a distinctive striped shirt jokingly attempted to take her items at the counter but placed them back in front of her.  After Frank left the store, it took several minutes to secure her children in their car seats.  When she got into the driver's seat, a man she did not know jumped in the passenger's seat and asked her for a ride.  She turned down his request.  The man from the store, now with the striped shirt wrapped around his head, appeared at the passenger's side window with a silver firearm and demanded money from Frank and the other man.  Frank threw the only cash she had, a $5 bill, toward the passenger's window; it landed in the man's lap.

Frank accelerated, and the car's movement pushed the gunman away.  The other man, still inside the car, moved his leg over Frank's legs and attempted to reach the brake pedal.  He managed to pull the keys from the ignition.  As he exited the car, he wiped down the vehicle with the inside of his shirt.  After he ran away, Frank retrieved the keys and drove to her friend's location.

During the subsequent investigation, police developed Jermaine Collins and Willie Moise as suspects.  When Detective Allyn Stone showed Frank photo packs containing their photographs, Frank immediately identified Collins as the gunman and Moise as the man who entered her car.

---

[1] This factual summary is derived from the trial transcript and the briefs filed on direct appeal.

On October 9, 2006, police came into contact with Collins and Moise near the Shady Side Market.  Officer Webb took Collins into custody.  Officer Kurt Bradshaw observed Moise flee after taking a silver revolver from a vehicle.  Following a pursuit, Moise was taken into custody.  Frank testified that she could not distinguish the revolver recovered from Moise's possession from the one used in the attempted robbery.  In particular, she recognized an engraving on the revolver's barrel.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000).  Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under

§ 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide.").  The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case.  "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693.  In other words, "AEDPA prevents

defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster,* 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

The state appellate court affirmed the denial of Collins' postconviction motion in a *per curiam* decision without a written opinion. This decision warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom. Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court. *Pinholster,* 563 U.S. at 181-82. Collins bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001).

## INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner must show both deficient performance by counsel and resulting prejudice. Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Collins must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To show prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A petitioner cannot meet his burden merely by showing that counsel's choices were unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the

circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). *See also Pinholster*, 563 U.S. at 202 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA."). If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered. *Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.")

## DISCUSSION

**Ground One**

Collins claims that the state trial court lacked subject matter jurisdiction over his case, resulting in violations of his rights to due process and equal protection. He claims that the court had no jurisdiction because the charging document was invalid. Specifically, he asserts that the charging document was not supported by sworn testimony of a "material witness."

To raise a cognizable federal habeas claim alleging a defective state court charging document, the document must be so defective that it deprives the court of jurisdiction. *See DeBenedictis v. Wainwright*, 674 F.2d 841, 842 (11th Cir. 1982) ("The sufficiency of a state indictment or information is not properly the subject of federal habeas corpus relief unless

the indictment or information is so deficient that the convicting court is deprived of jurisdiction.").

Collins has not made this showing.  Florida law provides that state circuit courts have jurisdiction over felony cases.  § 26.012(2)(d), Fla. Stat.  Additionally, the amended information filed in Collins' case set forth the elements of attempted robbery with a firearm as provided in Florida law.  (Dkt. 1A, pp. 26-27.)  *See* § 812.13, Fla. Stat. (defining robbery and addressing use of firearm or other deadly weapon).  The amended information also contains the required oath of the Assistant State Attorney stating his "good faith in instituting this prosecution" and certifying that "he has received testimony under oath from the material witness or witnesses for the offense."  (*Id.*)  *See* Fla. R. Crim. P. 3.140(g) (setting forth requirements of the oath).  Collins has not established that the testimony presented to the prosecutor was insufficient to lawfully support the charging document.  Therefore, he does not show any defect in the charging document that deprived the state court of jurisdiction so as to raise a cognizable claim.  Ground One warrants no relief.

**Ground Two**

Collins asserts that trial counsel was ineffective for failing to investigate and call two witnesses.  Specifically, Collins asserts that counsel should have called "Mike," the owner of the Shady Side Market, and Mohamed Youssouf,[2] the cashier, "to prove that [Collins] never entered the store on this particular day."  (Dkt. 1, p. 25.)

Collins claimed in his postconviction motion that Mike would have testified that he told Detective Stone he did not see Collins in the store that afternoon, that an incident at

---

[2]This individual's name is spelled several ways in the record.  It is spelled "Mohamed Youssouf" in the affidavit contained in the record.

the counter that day did not involve Collins, and that he gave Stone the surveillance video.

Collins presents what he asserts is a March 11, 2012 affidavit signed by Youssouf.  The

affidavit provides that Youssouf told Detective Stone he did not see Collins in the store on

the afternoon of the crime, and that an incident at the counter between a black male and

a Hispanic woman did not involve Collins.  (Dkt. 1, p. 46.)  Youssouf's affidavit states that

he "would have testified [Collins] was not the black male involved in the incident of

September 21, 2006."  (Dkt. 1, pp. 46-47.)

The state court rejected Collins' claim with respect to both prospective witnesses:

> The Defendant alleges that counsel was ineffective for failing to call two witnesses to testify on his behalf at trial: "Mike," the owner of the Shady Side Market, outside of which the attempted robbery took place, and his employee, Mohammad Yussif.  The Defendant contends that calling these witnesses would have supported a misidentification defense. . . .
>
> In the instant case, the victim, Cassandra Frank, was robbed at gunpoint outside the Shady Side Market after making a purchase in the store.  Ms. Frank was in her vehicle preparing to leave the parking lot of the store when two men, one unarmed and undisguised man and one disguised and armed man, attempted to rob her.  The victim identified the Defendant as the armed man who had disguised his face with a shirt.  Since the Defendant's face was partially disguised, this identification was partly based on an incident that took place inside the store prior to the attempted robbery.  Specifically, the victim testified that as she was making her purchase inside the store, the Defendant jokingly tried to take away her items before returning them.  She claims that the shirt that partially obscured the robber's face was the same shirt that she saw the Defendant wearing moments before inside the store.
>
> Defendant contends that both witnesses would have testified that they were familiar with the Defendant and did not see the Defendant in the store that day.  As asserted by the State, this does not prove that the Defendant was not in the store that day.  Since the witnesses make no claim that they saw every person who entered the store that day, it is a reasonable inference, given the victim's testimony that she saw Defendant in the store that the Defendant was in the store, but that the witnesses failed to observe him.  Given that this testimony would not exculpate the Defendant, and the fact that the victim was able to quickly identify both the Defendant and his codefendant, as well as the gun used by the Defendant, which was recovered from his codefendant, the Defendant cannot show prejudice from

the omission of this testimony.

In addition, even taking the Defendant's allegations as it concerns the store surveillance cameras as true, there is no reasonable probability that the outcome would have been different.  Defendant states that the Shady Side Market had an interior surveillance camera and that the video recording of the day of the crime was given to Detective Stone.  First, the Defendant does not allege what exculpatory evidence the video would have shown, if any.  Second, the indoor surveillance camera would not have captured the attempted robbery that occurred outside of the store.  Second, [sic] even if the surveillance tape was delivered to Officer Stone, which Detective Stone testified was not the case, this conflicting testimony about the existence of a surveillance tape would not have changed the outcome.  As stated above, the victim was able to quickly identify both the Defendant and his codefendant.  Further, the victim was able to identify the gun used by the Defendant, which was recovered from his codefendant.

(Dkt. 16, Ex. 3C, pp. 311-12) (court's record citations omitted).

The state court further found:

The Defendant alleges that counsel was ineffective for failing to call Mr. Mohammad Youssouf.  The Defendant asserts that Mr. Youssouf was available to testify and counsel was aware of this fact.  The Defendant's assertions regarding the substance of Mr. Youssouf's testimony, however, are contradictory and call into question their reliability.  In his motion for postconviction relief, filed on February 22, 2010, the Defendant stated that Mr. Youssouf would have testified that he had not "observed any kind of incident between a black male and a Hispanic female at the checkout counter on the afternoon of September 21, 2006."  In fact, Defendant alleges that this statement by Mr. Youssouf appears in the police report of Officer Stone, the investigating officer.  In its February 29, 2012 response, the State asserted that the Defendant was not prejudiced by this omission as Mr. Youssouf's testimony did not contradict the victim's testimony.  In his reply to the State's response, the Defendant attached the newly drafted affidavit of Mr. Youssouf.  In the affidavit, Mr. Youssouf states that he observed "an incident at the checkout counter, between a black male and a Hispanic woman on the afternoon of September 21, 2006," and that the Defendant was not involved in that incident.   This is in direct contradiction to the Defendant's sworn motion, which indicted that Mr. Youssouf would testify that he did not observe any such encounter.  Given the timing of the affidavit, its recent creation, and the fact that it directly conflicts with the Defendant's prior sworn statements regarding Mr. Youssouf, and apparently, Mr. Youssouf's statements to the police, the Court finds the affidavit unreliable.  Robinson v. State, 736 So.2d 93 (Fla. 4th DCA 1999) (discussing that an evidentiary hearing need not be held if the affidavit supporting the defendant's claim is inherently unreliable.)

Further, even assuming, *arguendo*, that the affidavit is reliable, the omission of Mr. Youssouf's testimony did not prejudice the Defendant. First, the affidavit does not set forth what Mr. Youssouf observed on the day of the robbery. Rather, the affidavit concerns what Mr. Youssouf told Officer Stone several days after the robbery. Thus, the affidavit is insufficient. Second, as the State points out, Mr. Youssouf's proposed testimony still does not contradict the victim's version of events. Mr. Youssouf does not state that he observed everyone who entered the store that day, nor does he state that the interaction between the Hispanic female and the black male at the checkout counter involved the victim or was the only such interaction that day. Thus, this testimony does not exculpate the Defendant. This is particularly true given the fact that Mr. Youssouf's testimony would have been impeached by his own prior inconsistent statements to Officer Stone that he did not witness an interaction between a black man and a Hispanic female on the date of the robbery. In addition to destroying the credibility of Mr. Youssouf, this impeachment evidence would have harmed the credibility of the defense. As a result, such testimony would not have resulted in a different outcome.

(*Id.*, pp. 427-28.)

Collins has not demonstrated ineffective assistance of counsel. "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [a reviewing court] will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995). Collins does not show that counsel performed deficiently in failing to call Mike or Youssouf. Collins offers no evidence to support his contention that Mike would have testified as he theorizes. *See United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted); *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636

(11th Cir.1985)).

Additionally, the anticipated testimonies of Mike and Youssouf may show that they simply did not observe Collins inside the store, not that Collins was not in fact there.  As the state court's order indicates, Collins alleged in his postconviction motion that Youssouf told Stone he did not see an altercation at the counter.  This is inconsistent with the statement in his affidavit that he saw an altercation but it did not involve Collins.  Assuming the prior inconsistent statement was made as described in Collins' postconviction motion, the State could have impeached Youssouf's credibility.[3]

Furthermore, Collins does not show prejudice as a result of counsel's omission. Even if Mike and Youssouf testified as Collins suggests, Collins does not demonstrate a reasonable probability that the outcome of trial would have changed.  Frank was certain in her identification of Collins.  She testified that she quickly identified his photo in the photo pack Stone showed her.  (Dkt. 16, Ex. 1B, pp. 125-26.)  Frank testified that the shirt over Collins' face did not prevent her from recognizing him as the same person who was in the store, and that she had no doubt Collins attempted to rob her.  (*Id.*, pp. 127-29.)  Detective Stone also testified that Frank immediately identified a photo of Collins in a photo pack, and that she stated the unique shirt wrapped around his face during the crime was the same one he was wearing earlier in the store.  (*Id.*, pp. 149-50.)  Frank also readily identified Moise as the other person involved. (*Id.*, pp. 125, 149.)  Finally, co-defendant Moise was later found in possession of a firearm indistinguishable from the one Frank observed during

---

[3] The police reports do not specifically corroborate this statement.  Stone's report does not mention any statements from store employees.  (Dkt. 16, Ex. 3A, pp. 72-76.)  Officer Trevor Gardner's report states that when Officer Sexton responded to the store, he could not locate any witnesses or suspects, and was told that the store had no exterior surveillance video.  (*Id.*, p. 68.)

the attempted robbery.

Collins has not shown that the state court's order was contrary to or an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts.  He is not entitled to relief on Ground Two.

**Grounds Three (A) and (D)**

In Grounds Three(A) and Three(D), Collins alleges that trial counsel was ineffective for failing to object to improper prosecutorial comment during opening and closing statements.

"An opening statement gives counsel the opportunity to state what evidence will be presented in order to make it easier for the jurors to understand what is to follow, and is not an occasion for argument." *United States v. Lizon-Barias*, 252 Fed. App'x 976, 978 (11th Cir. 2007).  "Opening remarks are not evidence, and the purpose of opening argument is to outline what an attorney expects to be established by the evidence." *Occhicone v. State*, 570 So.2d 902, 904 (Fla. 1990).  "[T]he 'sole purpose of closing argument is to assist the jury in analyzing, evaluating and applying the evidence.'" *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984) (quoting *United States v. Dorr*, 636 F.2d 117, 120 (5th Cir. 1981)).  While he may not go beyond the evidence presented to the jury, the prosecutor is not limited to a bare recitation of the facts.  The prosecutor may comment on the evidence and express the conclusions he contends the jury should draw from the evidence.  *United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984).  In Florida, "[w]hile wide latitude is permitted in closing argument, *see Breedlove v. State*, 413 So.2d 1, 8 (Fla. 1982), this latitude does not extend to permit improper argument."  *Gore v. State*, 719 So.2d 1197, 2000 (Fla. 1998).

An allegedly improper remark must be considered in the context of the proceeding as a whole, and relief is only available if an improper remark prejudiced the defendant's substantial rights. *See United States v. Beasley*, 72 F.3d 1518, 1525 (11th Cir. 1996) ("Prosecutorial misconduct is a basis for reversal only if, in the context of the entire trial and in light of any curative instruction, the misconduct may have prejudiced the substantial rights of the accused."). *See also United States v. Young*, 470 U.S. 1, 11 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial.").[4]

## A.    Failure To Object During Opening Statement

Collins asserts that the prosecutor "stated that the investigation . . . ended when the Petitioner was arrested four blocks from the scene of the attempted robbery," making it seem like he "was there at the scene" of the crime "and that the victim was right in her identification of him." (Dkt. 1, pp. 25-26.)

During his opening statement, the prosecutor said:

> [O]n September 26 [sic] of last year on 15th Avenue South in St. Petersburg in late afternoon Jermaine Collins . . . appeared at the window of an automobile driven by a woman by the name of Cassandra Frank and occupied by her two young children and put a gun in her face demanding her purse, wallet, and your whatever.

(Dkt. 16, Ex. 1B, p. 93.)   The prosecutor went on to describe what he expected the evidence to show about the crime and investigation.   (*Id.*, pp. 93-98.)  He then stated, "The investigation concludes when October 9th about 4 blocks away . . . investigating officers

---

[4] Prior to both opening statements and closing arguments, the court instructed the jury that what the attorneys said was not evidence.  (Dkt. 16, Ex. 1B, pp. 92, 165.)

from the St. Petersburg Police Department come into contact both with Mr. Collins and with

Mr. Moise." (*Id.*, p. 98.)  The prosecutor then noted that Collins lived less than a block from

the Shady Side Market.  (*Id.*, p. 99.)

The state court rejected Collins' claim of ineffective assistance for failing to object:

> The Defendant alleges that counsel was ineffective for failing to object and move for a mistrial when the prosecutor made improper statements to the jury during his opening statement.  Specifically, the Defendant claims that the prosecutor stated that the investigation in the above-styled case ended when the Defendant was arrested four blocks from the scene of the attempted robbery.  He contends that this statement was improper because he was arrested in the above-styled case while in custody on other charges and not four blocks from the scene of the attempted robbery.  The Defendant alleges that the prosecutor's statements were prejudicial and misleading because they made it appear as though the Defendant was arrested for the attempted armed robbery four blocks away from where the crime occurred, when in fact, the arrest referred to by the Prosecutor was on unrelated charges.
>
> The State contends and this Court agrees that the Defendant's claim is clearly refuted by the record.  During his opening statement, the prosecutor clearly states that the attempted robbery took place on September 21, 2006, and that the Defendant was arrested on October 9, 2006.  Therefore, the jury was not misled into believing that the Defendant was arrested immediately after the crime took place.
>
> Further, the prosecutor's statements regarding the Defendant being arrested four blocks away from the scene of the attempted robbery are not prejudicial.  The record indicates that the jury was made aware of the fact that the Defendant lived next door to the location where the attempted robbery took place.  Thus, the fact that the Defendant was arrested four blocks from the scene is harmless.
>
> Lastly, the record clearly shows that at no point during his opening statement did the prosecutor state or even imply why the Defendant was arrested on October 9, 2006.  As the State correctly asserts, it would have been improper for the prosecutor to discuss the unrelated charges for which the Defendant was arrested on October 9, 2006.  Therefore, this Court does not find any portion of the prosecutor's statements to be prejudicial, nor does it find that counsel's failure to object rendered his assistance ineffective.  The Defendant should note that counsel had no grounds upon which to base an objection to the prosecutor's statements, and therefore, cannot be held ineffective for failing to do so.  Schoenwetter v. State, 46 So.3d 535, 546 (Fla. 2010).  In light of the foregoing, this claim is denied.

(Dkt. 16, Ex. 3C, pp. 312-13) (court's record citations omitted).

It is clear that the prosecutor provided a chronological history of the offense, investigation, and subsequent arrest of Collins near the same physical location as the offense.  Collins does not demonstrate that the prosecutor's statements inaccurately implied that he was arrested at the time of the attempted robbery or suggested that Frank's identification was therefore correct.  Accordingly, he does not show that counsel was ineffective for failing to object or move for a mistrial.  Collins does not establish that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting this claim.  Ground Three(A) warrants no relief.

**D.     Failure To Object During Closing Argument**

In asserting that trial counsel was ineffective for failing to object to the State's improper closing argument, Collins argues that the prosecutor improperly 1) bolstered Bradshaw's testimony; 2) referred to Collins' arrest on unrelated charges; 3) referred to hearsay testimony from Bradshaw and Stone; and 4) elicited sympathy for the victim.

The state court rejected Collins' claim:

> The Defendant alleges that counsel was ineffective for failing to object to the State's improper closing arguments.  Specifically, the Defendant alleges the following: 1) that the State made comments implying a professional knowledge that improperly bolstered the testimony of Officer Bradshaw; 2) that the State referred to the Defendant's arrest on unrelated charges and implied the Defendant's guilt by stating that Mr. Moise had fled from the scene with the revolver; 3) that the State referred to hearsay testimony from Officer Bradshaw and Detective Stone; and 4) that the State's comments were improper because they were "made for the sole purpose of soliciting sympathy for the victim," thereby "improperly influencing the jury's verdict."  The Defendant further alleges that had counsel objected to these comments, the objections would have been sustained, and counsel could have made a motion for mistrial, which would have been granted by the Court.
> The State contends and this Court agrees that the Defendant's

allegations have no merit.  Closing argument is an opportunity for attorneys to comment on evidence and testimony, and to "explicate those inferences which may be reasonably drawn from the evidence."  <u>See</u> <u>Merck v. State</u>, 975 So.2d 1054, 1061 (Fla. 2007); <u>see also</u> <u>Bertolotti v. State</u>, 476 So.2d 130, 134 (Fla. 1985).  Both parties are afforded wide latitude "so that they may 'advance all legitimate arguments and draw logical inferences from the evidence.'"  <u>See</u> <u>Rivera v. State</u>, 840 So.2d 284, 286 (Fla. 5th DCA 2003) (quoting <u>McArthur v. State</u>, 801 So. 2d 1[0]37, 1040 (Fla. 5th DCA 2001)). When evaluating a prosecutor's comments during closing argument, the remarks "should be reviewed within the context of the closing argument as a whole and considered cumulatively within the context of the entire record." <u>Id</u>. at 287.  A comment may be viewed as inappropriate while standing alone however, "when considered within the context of the entire closing argument and the record, it may be a fair comment."  <u>Id</u>.

As previously stated, this Court does not find the testimonies of Officer Bradshaw and Detective Stone to constitute hearsay, and therefore, the State did not improperly bolster the credibility of the witnesses, nor did it refer to hearsay testimony during closing argument.  Rather, the State's comments were based on the evidence presented at trial, and therefore, even when considered cumulatively, counsel's failure to object to the State's remarks would not have changed the outcome of the trial.  <u>See</u> <u>State v. Bouchard</u>, 922 So.2d 424 (Fla. 2d DCA 2006); <u>see also</u> <u>Gonzalez v. State</u>, 990 So.2d 1017, 1028-29 (Fla. 2008) (Where comments originating from facts and inferences presented at trial were deemed proper for closing argument). Counsel cannot be deemed ineffective for failing to make a meritless objection.  <u>See</u> <u>Schoenwetter</u>, 46 So.3d at 546.  As such, this claim is denied.

(Dkt. 16, Ex. 3C, pp. 319-20.)

## 1.    Bolstering Testimony Of A State Witness

A prosecutor may not bolster testimony of a state witness:

Ordinarily, it is improper for a prosecutor to bolster a witness's testimony by vouching for that witness's credibility. *United States v. Hands,* 184 F.3d 1322, 1334 (11th Cir.1999). Bolstering occurs when " 'the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility.' " *United States v. Knowles,* 66 F.3d 1146, 1161 (11th Cir.1995) (quoting *United States v. Sims,* 719 F.2d 375, 377 (11th Cir.1983)).  A prosecutor's comments can fail this test in two ways: (1) by placing the prestige of the government behind the witness, or (2) by indicating that information not before the jury supports the witness's credibility. *Id.* The rule against bolstering does not, however, prevent the prosecutor from commenting on a witness's credibility, which can be central to the

government's case. *United States v. Hernandez,* 921 F.2d 1569, 1573 (11th Cir.1991).

*United States v. Bernal-Benitez*, 594 F.3d 1303, 1313–14 (11th Cir. 2010).

In his postconviction motion, Collins alleged that the prosecutor bolstered Officer Bradshaw's testimony when he said, "All those cops were out on the street that day.  They came into contact with Mr. Collins.  Yeah.   That is the evidence, the sworn, truthful testimony in this case."  (Dkt. 16, Ex. 1B, pp. 168-69.)  The prosecutor did not  invoke the prestige of the government with respect to Bradshaw's testimony or suggest that information unknown to the jury supported his credibility.   Accordingly, Collins does not establish counsel had a basis to raise a bolstering objection.

## 2. Reference To Arrest On Unrelated Charges

Collins also asserts that the prosecutor improperly addressed his arrest on unrelated charges[5] in making the above statement.  He states that the prosecutor again addressed his other charges and improperly implied his guilt by discussing Moise's flight from police on October 9 while in possession of the revolver.  The prosecutor stated:

> And what you heard more specifically was the fellow who's also been charged in this case but isn't on trial today, Mr. Moise, goes to a car.  I think the officer said it was a Por[s]che and pulls a firearm, flees, gets basically run down by several officers, and surrenders the firearm, the firearm that Ms. Frank indicates is indistinguishable from the firearm she saw pointed at her approximately 18 days earlier.

(*Id.*, p. 169.)

The prosecutor discussed Frank's immediate identification of both suspects, whom she had never met before the offense.  He continued:

---

[5] It appears Collins was charged in connection with events that occurred on October 9, 2006.

What is the likelihood other than accuracy and truthfulness that Ms. Frank would just by chance, just by chance hit it right cold on a guess?  But you know what?  If you want to think it through and give it a tough probability analysis, what is it taking everything I have said to you so far and combined with the fact that later on - - who is it that two - - who are the two fellows the cops find together?  Mr. Collins and Mr. Moise.

So what's just the chance that not knowing either one, she says, I recognize the first one?  I recognize the second one and then 18 days later these two fellows are together with a firearm that she identifies as being indistinguishable from the one that Mr. Collins had?. . .

I submit [to] you light[]ning would have to strike a bunch of times, a bunch of times.

(*Id.*, pp. 170-71.)

Taken in context, the prosecutor's comments demonstrate that he argued the circumstances of Frank's identifications of Moise and Collins showed her identifications to be credible.  Collins does not show that the prosecutor improperly implied Collins' guilt as a result of his association with Moise.  Additionally, contrary to Collins' argument, the prosecutor did not mention that Collins was arrested on unrelated charges.

**3. Referring To Hearsay**

Collins asserts that the prosecutor referred to hearsay when he stated:

[A]s you heard through Officer Bradshaw there were four empty shell casings taken out of the gun upon its seizure, two live bullets, and a blank used for test purposes by the St. Petersburg Police Department.  And there is, in fact, admitted into this case the testimony Officer Stone that it was, in fact, test fired and test fired as operable.

(*Id.*, p. 174.)

Collins does not establish that the testimony was hearsay.   The record supports the conclusion that Bradshaw had personal knowledge from which to identify the firearm and testify as to the casings and bullet that were removed from the firearm at the scene after

Moise was apprehended with it.  (Dkt. 16, Ex. 1B, pp. 132-40.)  Additionally, Stone testified

to the police department's policy to test fire every firearm recovered, and to include the test

fired cartridge in the packaging with the firearm.  (*Id.*, pp. 152-53.)  While he conceded on

cross-examination that he was not present when the revolver recovered from Moise was

test fired, he said he knew the revolver was test fired because it was packaged with such

a cartridge.  (*Id.*)

### 4. Eliciting Sympathy For The Victim

Finally, Collins asserts that the State intended to elicit sympathy for Frank.  It is

"well-established that a prosecutor may not appeal to a jury's passion or prejudice."  *United*

*States v. Wainwright*, 437 Fed. App'x 837, 848 (11th Cir. 2011) (citing *United States v.*

*Rodriguez*, 765 F.2d 1546, 1559-60 (11th Cir. 1985)).  *See also Bertolotti v. State*, 476

So.2d 130, 134 (Fla. 1985) (a prosecutor may not "inflame the minds and passions of the

jurors so that their verdict reflects an emotional response to the crime or the defendant

rather than the logical analysis of the evidence in light of the applicable law.").

The prosecutor stated:

> It was a difficult and traumatic time for Ms. Frank.  I submit to you that you
> had a chance to watch her testify here today.  And I submit to you that if you
> watched closely, you watched her fight back emotion and to remain under
> control.  Did you see her reaction when I put the firearm in front of her?  Did
> you hear her say, I don't want to touch it when I asked her to look at it?
>
> I submit to you the State has proved beyond a reasonable doubt she was put
> in fear, a fear that extends from September 21st of last year to this day in
> 2007 in this courtroom before you as jurors in this case.  That's the fear. And
> although indelicate, although indelicate perhaps and I apologize on behalf of
> the State, yes, she urinated in her clothing.

(Dkt. 16, Ex. 1B, p. 175.)

Robbery is defined as:

> [T]he taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking *there is the use of force, violence, assault, or putting in fear.*

§ 812.13(1), Fla. Stat. (emphasis added)

To prove attempted robbery, therefore, the State had to show that Collins "[did] any act toward the commission of [robbery], but fail[ed] in the perpetration or [was] intercepted or prevented in the execution thereof." § 777.04(1), Fla. Stat. Collins does not show that, in light of the State's burden to prove attempted robbery, counsel had reason to object to the prosecutor's comments as improperly garnering sympathy for her.[6]

Collins has not demonstrated that counsel had reason to object to the closing argument on any of the bases alleged. Therefore, he fails to show ineffective assistance. *See Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) ("Counsel was not ineffective for failing to raise these issues because they clearly lack merit."). Nor does Collins demonstrate a reasonable probability the outcome of trial would have been different had counsel objected. Collins does not show that the state court's decision was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts. He is not entitled to relief on Ground Three(D).

**Ground Three(B)**

Collins contends that trial counsel was ineffective for failing to object when the State elicited false testimony from Bradshaw. The state court rejected this argument:

> The Defendant alleges that counsel was ineffective for failing to object

---

[6] In addition, the jury was instructed not to decide the case "for or against anyone because you feel sorry for anyone or are angry at anyone." (Dkt. 16, Ex. 1B, p.186.)

and move for mistrial when the prosecutor elicited false testimony from Officer Bradshaw. The Defendant alleges that Officer Bradshaw's testimony at trial regarding the October 9, 2006 arrest was substantially different from his police report of the arrest made on October 9, 2006. The Defendant further claims that counsel had possession of all the police reports, knew that the testimony was false, failed to object to the testimony, and failed to adequately cross-examine Officer Bradshaw. The Defendant contends that had counsel objected to Officer Bradshaw's testimony or effectively cross-examined him, then the outcome of the trial would have been different.

The State contends and this Court agrees that the record refutes the Defendant's claim. Officer Bradshaw's police report is not materially inconsistent with his testimony at trial. Whatever inconsistencies may be found between Officer Bradshaw's police report and his testimony at trial are inconsequential. To begin with, the Defendant's allegation that Officer Bradshaw's police report of the October 9, 2006 arrest did not mention seeing Mr. Moise, Defendant's codefendant, actually take the gun from the car is wholly irrelevant. Office[r] Bradshaw's police report clearly indicates that Mr. Moise fled from the police officers whilst carrying a "silver colored revolver." The fact that the police report is silent as to how Mr. Moise came to carry the gun does not change the fact that he was in possession of the gun whilst fleeing on foot. Additionally, the Defendant's contention that this portion of Officer Bradshaw's testimony implies by default that the Defendant is also dangerous and guilty is purely speculative, and therefore, insufficient to substantiate that counsel's failure to object to this testimony rendered his assistance ineffective. See Griffin v. State, 866 So.2d 1, 9 (Fla. 2003); State v. Young, 932 So.2d 1278, 1282-83 (Fla. 2d DCA 2006) (holding that the burden of establishing a prima facie case based upon a legally valid claim "cannot be overcome by mere speculation"). Again, the Defendant should note that counsel cannot be deemed ineffective for failing to make a meritless objection. See Schoenwetter, 46 So.3d at 546.

Secondly, the fact that Officer Bradshaw's police report is silent as to seeing the Defendant being taken into custody does not mean that he did not see the Defendant *in custody* when he arrived at the scene. As Officer Bradshaw testified at trial and as the record corroborates, it was Officer Webb who took the Defendant into custody. The record also clearly indicates that the Defendant was in custody prior to Mr. Moise fleeing on foot from the police officers with a firearm in hand. Additionally, the fact that Officer Bradshaw may have testified about an irrelevant detail in a way that was different from his initial police report does not mean that he falsely testified as to what he saw. Rather, as the State correctly points out, it simply means that he remembered an already insignificant detail slightly differently a year later. See Ferrell v. State, 29 So.3d 959, 978 (Fla. 2010).

Thus, this Court does not find that the prosecutor elicited false testimony from Officer Bradshaw, and as such, counsel had no basis upon which to object to Officer Bradshaw's testimony. The Defendant should also

note that when alleging a claim that counsel was ineffective for failing to file a motion for mistrial, the Defendant must show that the motion had merit.  Id. In this instance, the Defendant has neither shown that counsel's actions were prejudicial, nor that such a motion would have been successful.  As such, counsel's actions cannot be deemed ineffective and for the reasons stated, this claim is also denied.

(Dkt. 16, Ex. 3C, pp. 313-15) (court's record citations omitted).

Bradshaw testified at trial that when he arrived at the scene on October 9, 2006, he observed Officer Webb take Collins into custody.  (Dkt. 16, Ex. 1B, p. 135.)  His police report, however, makes no mention of Collins' custody and appears only to address Moise. (Dkt. 16, Ex. 3A, pp. 79-80.)  Bradshaw also testified at trial that when he arrived, he observed Moise remove a silver firearm, which Bradshaw believed to be a revolver, from a car. (Dkt. 16, Ex. 1B, p. 136.)  Bradshaw testified that Moise fled on foot and that Bradshaw kicked the gun away when Moise was apprehended.  (*Id.*, pp. 136-37.) Bradshaw's police report states, "I arrived on the scene and saw Ofc. PAULINA involved in a foot chase with one of the subjects described." (Dkt. 16, Ex. 3A, p. 79.)  It does not describe Moise retrieving the firearm or Bradshaw kicking it away.  (*Id.*, pp. 79-80.)

There is support for the state court's conclusion that the report's omission of details about which Bradshaw testified at trial did not show Bradshaw's testimony to be false. Although he provided more information at trial, Bradshaw's statements were not inconsistent.[7]  Moreover, as the state court noted, Bradshaw consistently said that he observed Moise running from the scene and that Moise had a silver revolver.  (Dkt. 16, Ex. 1B, pp. 136-37; Ex. 3A, p. 79.) Collins fails to show that counsel performed deficiently in

---

[7] In support of his claim, Collins pointed out in his postconviction motion that Paulina's report states that after Moise was taken into custody, Paulina "tossed the gun to the south." (Dkt. 16, Ex. 3A, p. 86.)  This information does not demonstrate that Bradshaw's testimony that he kicked the gun away was false.  Collins does not establish that only one of these officers touched the gun after police apprehended Moise.

failing to object to false testimony or in failing to cross-examine Bradshaw about his police

report.  Nor does he demonstrate resulting prejudice.  Accordingly, Collins has not shown

that the state court unreasonably applied *Strickland* or unreasonably determined the facts

in denying this claim.  Collins is not entitled to relief on Ground Three(B).

**Ground Three(C)**

Collins claims that trial counsel was ineffective for failing to object to irrelevant and

inadmissible testimony of Bradshaw and Stone.[8]  The state court rejected this claim:

> **Ground Three C: Failure to Object to Irrelevant and Inadmissible Testimony**
>
> The Defendant alleges that counsel was ineffective for failing to object to the prosecutor eliciting "irrelevant, inadmissible testimony" from Officer Bradshaw and Officer Stone.
>
> **Officer Bradshaw**
>
> With respect to Officer Bradshaw's testimony, the Defendant alleges that counsel should have objected on at least seven different occasions. First, the Defendant claims that Officer Bradshaw had no direct involvement in the Defendant's arrest for the attempted robbery and therefore, his testimony is irrelevant to the Defendant's guilt or innocence.  This claim is refuted by the record.  The record clearly indicates that Officer Bradshaw was one of the officers responding to the scene of arrest on the unrelated charges on October 9, 2006.  As mentioned above, the record also indicates that Officer Bradshaw observed the Defendant in custody.  The record further indicates that Officer Bradshaw observed Mr. Moise fleeing from the police officers armed with a revolver, which was later identified by the victim as the same revolver used in the attempted robbery.  Therefore, the Defendant is incorrect in his assertion that Officer Bradshaw's testimony is irrelevant. Furthermore, as noted above, counsel cannot be deemed ineffective for failing to make a meritless objection.  See <u>Schoenwetter</u>, 46 So. 3d at 546.
>
> Second, the Defendant alleges that Officer Bradshaw's testimony regarding his familiarity with the Defendant prior to the arrest made on October 9, 2006, is irrelevant and prejudicial.  The State contends and this Court agrees that this argument lacks merit.  Officer Bradshaw testified that he was familiar with the Defendant because the Defendant had worked for Tri J Wrecker, a towing company that provides services to the St. Petersburg

---

[8] Collins' claim is liberally interpreted as raising the allegations that he brought in Claim Three C of his postconviction motion.

Police Department.  Officer Bradshaw then testified that he came into contact with the Defendant on the date of his and Mr. Moise's arrest.  This Court finds that the testimony serves to substantiate to the jury how Officer Bradshaw was able to identify the Defendant when he observed him in custody on October 9, 2006, and is therefore, relevant to the above-styled case.  As such, counsel's failure to object cannot be deemed ineffective.  Id.

The Defendant also alleges that Officer Bradshaw's testimony that he observed the Defendant being taken into custody by Officer Webb is irrelevant and prejudicial.  Specifically, the Defendant claims that the charges which led to his arrest are not related to the offense for which he was on trial, and the testimony was merely a fabrication on the part of Officer Bradshaw.  As reasoned above in Claim Two, this Court does not find this testimony to be a fabrication as the record corroborates Officer Bradshaw's testimony that it was Officer Webb who took the Defendant into custody.  The Defendant has again, failed to show how such testimony is prejudicial and as the record refutes the claim that this testimony is a fabrication, counsel cannot be deemed ineffective for failing to make a meritless objection.  Id.  Furthermore, the Defendant's allegation is speculative and therefore, insufficient to substantiate that counsel's alleged deficiency was prejudicial; and such claims cannot be the basis for postconviction relief.  See Spencer v. State, 842 So.2d 52 (Fla. 2003); Strickland, 466 [U.S.] at 687.

The Defendant further alleges that Officer Bradshaw's testimony that he observed Mr. Moise taking the gun out of the car was fabricated and prejudicial.  For the reasons stated above with respect to Claim Two, this Court does not find this testimony to be a fabrication.  Rather, the record clearly indicates that Officer Bradshaw was present at the scene when Mr. Moise fled from police officers armed with a revolver.  Additionally, this Court fails to see how such testimony is prejudicial, when both the Defendant and Mr. Moise were taken into custody at the same place and at the same time.  Again, counsel cannot be deemed ineffective for failing to make a meritless objection.  See Schoenwetter, 46 So. 3d at 546.

The Defendant alleges that Officer Bradshaw's testimony that he kicked away the gun and helped in the chase and apprehension of Mr. Moise is irrelevant and prejudicial because it did not relate to the offense for which the Defendant was on trial.  The Defendant's argument has no merit.  Evidence is relevant if it has a logical tendency to prove or disprove a fact which is of consequence to the outcome of an action.  See Gibbs v. State, 406 So. 2d 1113 (Fla. 1981).  In this instance, the firearm in possession of Mr. Moise at the time of arrest was subsequently identified by the victim as the one used in the attempted robbery in this case.  In addition, the victim identified both the Defendant and Mr. Moise as the men who attempted to rob her.  Thus, counsel had no basis upon which to object and therefore, cannot be deemed ineffective.  See Schoenwetter, 46 So. 3d at 546.

Additionally, in claim 3A, the Defendant alleged that counsel provided ineffective assistance by failing to object when the prosecutor failed to

explain that the arrest was based on unrelated charges. It appears that the Defendant's claim here contradicts his previous allegation. See Davis v. State, 938 So.2d 555, 558 (Fla. 1st DCA 2006) (affirming denial of motion in part because the defendant's allegations contradict each other). Once again, the Defendant should take note if such an objection had been made by counsel, it would have been meritless. See Schoenwetter, 46 So. 3d at 546.

The Defendant claims that counsel should have objected to Officer Bradshaw's testimony identifying the revolver that was entered into evidence. Specifically, the Defendant claims that Officer Bradshaw "did not personally take the revolver into evidence, remove the rounds from the cylinder of the revolver, and bad and tag those items." Therefore, the Defendant contends, Officer Bradshaw was not qualified to identify the revolver. The Defendant's argument has no merit. A witness must have personal knowledge of the matters about which he or she testified. The testimony must be based on matters perceived by the senses of the witnesses. Fla. Stat. § 90.604 (2012). A witness who has observed or actually perceived an act is the most reliable source of information. See State v. Eubanks, 609 So. 2d 107 (Fla. 4th DCA 1992). As previously mentioned, Officer Bradshaw was present when Mr. Moise fled from police officers with the revolver in question, and therefore, had personal knowledge of the revolver. Additionally, Officer Bradshaw testified that he observed an officer at the scene remove the shell casings and live rounds from the bullet [sic]. Lastly, it appears as though the Defendant is trying to insinuate an issue relating to the chain of custody of the revolver, however, there is nothing in the record to support this argument. Once again, counsel would have had no basis upon which to object and therefore, cannot be deemed ineffective. See Schoenwetter, 46 So. 3d at 546.

Lastly, the Defendant alleges that counsel should have objected to Officer Bradshaw's testimony regarding the use of the Defendant's booking photograph as a basis for identification. Specifically, the Defendant appears to allege that the booking photograph from the date of the arrest on unrelated charges was prejudicial and unnecessary because the Defendant was sitting before Officer Bradshaw in the courtroom, and therefore, the photograph had no probative value in the above-styled case. The Defendant contends that had counsel made an objection, there is a reasonable probability that the Court would have issued a curative instruction to the jury.

The State contends and this Court agrees that the Defendant's argument is without merit. The Defendant has not adequately shown how counsel's actions were prejudicial, or how a curative jury instruction would have resulted in a different outcome. Even if counsel had objected to Officer Bradshaw's testimony as it relates to the booking photograph, it would not have changed the fact that Officer Bradshaw was already familiar with the Defendant based on his work for the towing company. As such, the Court does not find the use of the booking photograph to be prejudicial, and therefore, an objection by counsel would have been meritless. See

Schoenwetter, 46 So. 3d at 546.  As such, this portion of the Defendant's claim is denied.

### Detective Stone

The Defendant alleges that counsel provided ineffective assistance by failing to object to Detective Stone's testimony that the revolver recovered from Mr. Moise at the scene of the arrest was found to be fully functional. Specifically, the Defendant contends that Detective Stone's testimony was hearsay because it was in fact Officer Paulina who fired the gun to test its functionality, and such testimony was irrelevant because the State was not required to prove that the revolver was operational.  Therefore, the Defendant contends, counsel's failure to object to such irrelevant hearsay testimony resulted in the introduction of inadmissible evidence.  The Defendant further alleges that Detective Stone's testimony that he observed the Defendant in custody when he arrived at the scene of the arrest was prejudicial and irrelevant because the arrest was made on unrelated charges. The Defendant alleges that had counsel made these objections, the Court would have sustained them and issued a curative instruction to the jury.

The State contends and this Court agrees that the Defendant's arguments have no merit.  First, as stated above, testimonial evidence regarding the recovery of the revolver is relevant.  Second, a number of Defendant's assertions are refuted by the record.  The record clearly reflects that Detective Stone never testified that the Defendant was arrested on unrelated charges.  Additionally, the record shows that Detective Stone testified on direct examination and on cross-examination that he had not personally test fired the revolver.  Moreover, Detective Stone explained that it was standard protocol to "test fire every firearm that appears to be safe to test fire."  Lastly, the Defendant has failed to show prejudice.  Defendant's claim that the Court would have sustained counsel[']s objection and issued a curative instruction, is conclusory and speculative, and cannot be the basis for postconviction relief.  See Griffin v. State, 866 So. 2d 1.  In light of the foregoing, this claim is also denied.

(Dkt. 16, Ex. 3C, pp. 315-19) (court's record citations omitted).

The record supports the state court's conclusion that Collins failed to establish that the identified portions of Bradshaw's testimony were irrelevant, prejudicial, or fabricated. Additionally, Bradshaw testified to his personal knowledge of the firearm and the casings and bullet removed from it.  (Dkt. 16, Ex. 1B, pp. 135-40.)  Finally, even assuming that counsel performed deficiently in not objecting to the introduction of Collins' booking photograph, Collins has not shown resulting prejudice.  He fails to establish a reasonable

probability of a different outcome absent the photograph in light of the totality of the State's evidence, as well as the jury's knowledge that he had been taken into custody.

The record also supports the conclusion that counsel was not ineffective for failing to object to Stone's testimony.  As addressed, he stated that a cartridge packaged with the revolver led him to conclude that it was test fired.  Additionally, the record supports the conclusion that the circumstances under which Collins was taken into custody were relevant to the charge against him.  He was apprehended near the location of the attempted robbery with another suspect in that crime, who had a firearm indistinguishable from the one Franks observed during the offense.  Collins does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts when it rejected his claim.  He is not entitled to relief on Ground Three(C).

**Ground Four (A)**

Collins alleges that trial counsel was ineffective for failing to cross-examine Frank and impeach her testimony.  He asserts that counsel should have raised differences between Frank's trial testimony, her statement to Detective Stone, and her statement to Officer Trevor Gardner, who responded after the offense.  In rejecting his claim, the state court listed the alleged inconsistencies and found:

> The Defendant . . . alleges that a cross-examination of Ms. Franks would have undermined her credibility to the jury, such that the jury would have returned a verdict of not guilty.
> The State contends and this Court agrees that the Defendant's allegations have no merit.  To begin with, the inconsistencies pointed out by the Defendant are either nonexistent or inconsequential and any cross-examination on the part of counsel would not have yielded a different outcome.  For instance, the Defendant has failed to show that Ms. Frank's testimony regarding whether the robbery took place before or after she went into the store is inconsistent with the police report, for the police report makes no mention of when the attempted robbery took place; it simply states that

she stopped at the store to buy a drink for her children.

Additionally, the State asserts that had counsel cross-examined Ms. Frank about the purported inconsistencies, it would have been more prejudicial to the Defendant because it would have allowed the victim to tell the jury again, that she was so hysterical at the time that she was unable to dial 911; or that she could not recall the exact details of the incident because she was so scared that she urinated in her pants.  With respect to the Defendant's allegations regarding Ms. Frank being influenced by Detective Stone, Detective Mitchell or the State, such claims are speculative and cannot be the basis for postconviction relief.  See Spencer, 842 So.2d at 52.

(Dkt.16, Ex. 3C, pp. 320-21) (court's record citations omitted).

The record supports the state court's denial of Collins' claim.  Collins has identified (1) statements that are not inconsistent; (2) statements that reveal only inconsequential discrepancies; and (3) two instances in which he claims Frank's testimony was encouraged by others.[9]

1.      Collins raises statements by Frank that, contrary to his arguments, do not reveal any inconsistencies.  First, Frank testified at trial that Moise entered the car after she left the store.  (Dkt. 16, Ex. 1B, p. 110.)  Gardner's police report states that Frank "stopped at the Shady Side Market to get her children a drink.  At that time a subjected entered her vehicle." (Dkt. 16, Ex. 3A, p. 67.)  As the state court found, the police report's silence about Frank's entry into the store prior to the incident does not show that Frank made inconsistent statements.

Second, Frank testified that Collins' shirt was "tied around his head with like a little -- enough room to see through it with one eye."  (Dkt. 16, Ex. 1B, p. 127.)  She told Gardner

---

[9] The Court takes note that, to the extent that Collins argues the police reports demonstrate prior inconsistent statements by Frank, those reports contain summaries written by police officers.  There is no indication they included every statement Frank made to police or recited any of her statements verbatim.

that Collins had shirt pulled over his head and told Stone that Collins had the shirt tied around his face.   (Dkt. 16, Ex. 3A, pp. 67, 74.)   These statements are not necessarily inconsistent.   They all convey that Collins' shirt was placed around his head.

Third, Collins notes that Stone's report says that Frank provided a description of Collins' clothing but alleges that Gardner's report states she could not describe the clothing. Gardner's report, however, does not state that Frank was not able to remember; it simply does not mention any description of clothing.   (*Id.*, pp. 66-68.)   Collins has not shown any prior inconsistent statements by Frank.

Fourth, Frank testified that Collins was standing "on the corner of the counter" when she paid for her sodas at the checkout counter. (Dkt. 16, Ex. 1B, p. 108.) Stone's report states Collins was in the store "behind her."   (Dkt. 16, Ex. 3A, p. 74.) These statements are not necessarily inconsistent.

Fifth, Frank testified at trial that the revolver was silver and that, while she "didn't really see" the handle, she thought it was black or dark in color.  (Dkt. 16, Ex. 1B, p. 118.) She testified that she did not "really look" at anything but the barrel.  (*Id.*)  Specifically, she noted the firearm introduced into evidence at trial looked the same as the one used in the offense because of the "engraving symbol" on the barrel.  (*Id.*, pp. 119-20.)  In discussing Frank's descriptions of the firearm, Gardner's and Stone's reports contain no mention of an engraving on the gun.  (Dkt. 16, Ex. 3A, pp. 67, 75.) However, that Frank provided more detail at trial does not mean that her previous statements were inconsistent.

Sixth, at trial, Frank did not describe Collins as wearing a top other than the striped shirt.  (Dkt. 16, Ex. 1B, pp. 100-29.)   Stone's report indicates that Frank saw Collins wearing a white tank top.  (Dkt. 16, Ex. 3A, pp. 74, 75.) Collins has not demonstrated any

inconsistency in Frank's statements.  Even if this omission from Frank's testimony was viewed as an inconsistency, it is insignificant.  Collins points to no evidence that the tank top was important to Frank's identification of him as the gunman.

**2.**    Collins also points to statements by Frank that contain minor inconsistencies.  First, Frank testified at trial that when Collins demanded money, Moise pulled wadded up bills from his pocket and threw them in his lap.  (Dkt. 16, Ex. 1B, p. 113.)  Gardner's report states that Frank said Moise was "tossing [money] at the subject standing outside" the car.  (Dkt. 16, Ex. 3A, p. 67.)  However, whether Moise threw the money in his own lap or "at" Collins is a minor discrepancy, and both descriptions show that Moise threw money in response to Collins' demand.

Second, Frank testified that Moise was standing outside the door of Shady Side Market, leaning against a pole, when she entered the store.  (Dkt. 16, Ex. 1B, p. 110.)  Stone's report provides that Frank stated "both . . . subjects were already in the store when she entered."  (Dkt. 16, Ex. 3A, p. 74.)  However, Collins does not explain the importance of this discrepancy.

**3.**    Finally, Collins asserted that counsel should have asked Frank whether portions of her testimony were prompted by others.  First, he claims that the prosecutor may have shown her the firearm prior to trial to prod her into remembering the engraving.  Collins offers no support for his argument.  The record therefore supports the state court's conclusion that this claim is too speculative to warrant relief.  *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).

Second, Collins asserts that Stone prodded Frank into remembering the incident inside the store and Collins' unique shirt.  Stone's report provides that Frank discussed the incident and Collins' clothing, and states:

> Initially Mrs. FRANK indicated that she did not think anything of this until she was asked by myself and Detective MITCHELL if she had any conversations with anyone inside of the store prior to the robbery and then this is when she remembered the subject wearing the unique polo shirt and then remembered that the suspect that was armed with the silver revolver had the same style and design shirt tied around his face and was now wearing a white tank top with the same colored and style charcoal shorts.

(Dkt. 16, Ex. 3A, p. 74.)

Even if counsel questioned Frank about why she did not raise this information until the officers asked her specific questions, Collins has not shown that her trial testimony was false or that this portion of her statement to police was improperly elicited.

Collins has not demonstrated that counsel performed deficiently in failing to cross-examine Frank about any of the matters raised in Ground Four A.  Nor does Collins establish a reasonable probability that the outcome of the proceeding would have been different if counsel cross-examined Frank on any or all of these statements in light of the State's evidence of guilt.  He does not demonstrate that the state court's ruling was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.   Ground Four(A) warrants no relief.

**Ground Four(B)**

Collins claims that trial counsel was ineffective for failing to cross-examine Bradshaw.  He states that counsel could have impeached Bradshaw with his "numerous inconsistent statements regarding his arrival at the scene of the crime and what he claim [sic] he had observed."  (Dkt. 1, p. 13.)

The state court rejected Collins' claim:

> The Defendant alleges that counsel was ineffective for failing to cross-examine Officer Bradshaw.  Specifically, the Defendant contends that counsel could have impeached Officer Bradshaw because he made inconsistent statements regarding when he arrived on the scene of the arrest and what he observed.  The Defendant contends that had counsel impeached Officer Bradshaw, the jury would have questioned his credibility and there is a reasonable probability that the outcome of the trial would have been different.
> This is the third time the Defendant has raised this same claim in the instant motion.  Once again, as stated in this Court's denial of Claims Three B and Three C, this Court does not find any inconsistencies of consequence in Officer Bradshaw's testimony.  Moreover, given the evidence and testimony offered against the Defendant, it is unlikely that attempting to impeach Officer Bradshaw's credibility during cross-examination would have resulted in a different outcome at trial.  See Strickland, 466 [U.S.] at 687; Bucherie, 468 So. 2d at 231.  Accordingly, this claim is also denied.

(Dkt. 16, Ex. 3C, p. 321) (court's record citations omitted).

As addressed, Collins has not shown that Officer Bradshaw's testimony was false or was inconsistent with his police report.  Accordingly, the record supports the state court's conclusion that counsel was not ineffective for failing to cross-examine Bradshaw about his police report.  Collins does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claim.  Collins is not entitled to relief on Ground Four(B).

**Ground Five**

Collins argues that trial counsel was ineffective for failing to object to four biased jurors.  Collins notes that two jurors had been crime victims, one was a private investigator, and one said she would consider law enforcement officers to be credible.  The state court rejected Collins' ineffective assistance claim:

> The Defendant alleges that Juror[ ] McKinley, Juror Hudson, Juror Newman, and Juror Miller were biased and that counsel was ineffective for

failing to object.  The Defendant contends that because Juror McKinley, the foreperson, was a private investigator, he would have placed more faith in the testimonies of law enforcement, and other jurors would have followed suit because of his training.  The Defendant alleges that during *voir dire* Juror Hudson stated that she would place more trust in law enforcement testimony. The Defendant then states that Juror Newman and Juror Miller were both the victims of crimes and therefore counsel should have objected to their inclusion in the jury.  The Defendant further alleges that the Court prevented him from making his objections to these jurors during the voir dire process. The Defendant maintains that effective counsel would have objected to these particular jurors based on their underlying prejudices, and had counsel made such objections, the outcome of the proceedings would have been different.

To begin with, the State contends and this Court agrees that the record refutes the Defendant's contention that the Court prevented the Defendant from objecting to the Court during jury selection.  The record reflects that the Defendant was attempting to complain about prospective jurors seated in row two and the Court explained to the Defendant that the discussion was currently limited to row one, and therefore, that the Defendant's objections were to prospective jurors not seated on the jury panel.  Moreover, the Defendant's assertions regarding Jurors McKinley, Hudson, Newman, and Miller are entirely speculative and cannot be the basis for postconviction relief.  See Nelson v. State, 73 So. 3d 77, 86 (Fla. 2011) ("It is mere speculation that the use of peremptory challenges for those jurors would have resulted in a different, defense-friendly outcome.") (citing Johnson v. State, 921 So. 2d 490, 503-04).  This is particularly true here, where the prospective jurors stated that they could follow Florida Law and consider the case on its merits.  As such, the Defendant has failed to show that counsel's actions were prejudicial, or that absent counsel's ineffective assistance, the outcome of the trial would have been different.  Therefore, this claim is also denied.

(Dkt. 16, Ex. 3C, p. 322.)

The record supports the denial of this claim.  A criminal defendant has a constitutional right to trial by an impartial jury.  *See Irvin v. Dowa*, 366 U.S. 717, 722 (1961) ("In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors.").  "A party challenging a juror for cause must demonstrate that the juror in question exhibited actual bias by showing either an express admission of bias or facts demonstrating such a close connection to the present case that bias must be

presumed." *United States v. Chandler*, 996 F.2d 1073, 1102 (11th Cir. 1993). To be entitled to postconviction relief in state court when claiming that a juror was not impartial, the party must prove bias. "[W]here a postconviction motion alleges that trial counsel was ineffective for failing to raise or preserve a cause challenge, the defendant must demonstrate that a juror was actually biased." *Carratelli v. State*, 961 So.2d 312, 324 (Fla. 2007).

During voir dire, Juror Newman stated that he had been assaulted at his home about seven years prior, and Juror Miller stated she was "mugged and robbed" twelve to fifteen years earlier. (Dkt. 16, Ex. 1B, p. 10.) Both jurors said they could set those incidents aside and judge Collins' case on its own merits. (*Id.*, pp. 10-11.) Juror McKinley was a private investigator for insurance companies. (*Id.*, p. 28.) He stated that he had never worked in law enforcement, and that he gathered and presented evidence for insurance companies. (*Id.*, pp. 46-48.)

It appears that Juror Hudson raised her hand when the court asked whether anyone believed that a law enforcement witness "is automatically entitled to greater believability when compared with a non law enforcement witness." (*Id.*, p. 22.) The court inquired:

> THE COURT: All right. Here is the law of Florida. All witnesses are judged by the same standards. No one gets any extra credibility based on their occupation alone. Is there anyone on the panel that cannot follow Florida law? I don't see any hands. Ms. Hudson, can you abide by Florida law?
>
> PROSPECTIVE JUROR HUDSON: Yes, sir.

(*Id.*, p. 23.)

Hudson explained upon questioning by defense counsel:

> [COUNSEL]: Now, Ms. Hudson.

PROSPECTIVE JUROR HUDSON: Yes, sir.

[COUNSEL]: Would it be fair to say that you would put more stock or believability in a uniformed police officer's testimony than a normal civilian witness?

PROSPECTIVE JUROR HUDSON: My earlier response was, I think, an emotional based one.  I think emotionally it would - - a uniformed officer would carry more weight with me or a police officer would.

[COUNSEL]: That is true today?

PROSPECTIVE JUROR HUDSON: Well, before the judge said I had to think of him equally.

[COUNSEL]: Okay.  My question is are you willing to put that aside?

PROSPECTIVE JUROR HUDSON: Absolutely.  I said that earlier.

[COUNSEL]: So you have no problem with it?

PROSPECTIVE JUROR HUDSON: Yeah.

(*Id.*, pp. 74-75.)

Collins does not demonstrate that counsel had a basis to object.  The jurors' statements do not indicate that they would not be fair and impartial.  Furthermore, as Collins has not established actual bias on the part of these jurors, he does not show any prejudice as a result of counsel's performance.  Accordingly, Collins fails to show that the state court's ruling was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.  He is not entitled to relief on Ground Five.[10]

**Ground Six**

---

[10] Collins does not argue in his federal habeas petition that the state trial court prevented him from participating in jury selection, as he did in claim five of his postconviction motion.  Even if he intended to raise this portion of the claim, the record supports the state postconviction court's finding that his argument is without merit.  (Dkt. 16, Ex. 1B, pp. 81-82.)  This claim provides no relief.

Collins contends that trial counsel was ineffective for failing to give an adequate closing argument. He asserts that counsel conceded his guilt and merely "asked jurors to find that there was no firearm used." (Dkt. 1, p. 15.) Collins asserts that counsel should have argued misidentification or "the inconsistency in statements made against him." (*Id.*, p. 30.)[11]  The state court denied Collins' ineffective assistance claim:

> The Defendant alleges that counsel was ineffective for making a futile closing argument. The Defendant alleges that counsel conceded that the Defendant committed the offense by only asking the jury to find that a firearm was not used. The Defendant further contends that counsel's strategy throughout the trial was not to prove that the Defendant did not commit the offense, but merely to show that a firearm was not used. The Defendant contends that this strategy was reflected in counsel's questioning of the witnesses and but for counsel's actions, the outcome of the trial would have been different.
>
> The State argues and this Court agrees that the Defendant's claim has no merit. The victim identified the Defendant as the man holding the gun during the attempted robbery; the victim testified that she was able to identify the Defendant in the photo pack within a matter of seconds; and Detective Stone testified that the victim "immediately" identified the Defendant as the perpetrator. Therefore, the Defendant misrepresents counsel's statements when he asserts that counsel conceded his identity and guilt during closing argument. It is clear from the context of counsel's statements that counsel was pointing to a lack of evidence in the State's case; specifically, the evidence linking the Defendant to the gun involved in the offense. Additionally, as correctly argued by the State, the Defendant fails to demonstrate prejudice because he does not offer an alternative argument that counsel could have pursued. See Henry v. State, 862 So. 2d 679, 683 (Fla. 2003); see also Everett v. State, 54 So. 3d 464, 479 (Fla. 2010) (The defendant has failed to show Strickland prejudice because he does not explain "what counsel could have argued in the final closing arguments that would have swayed the jury."). For the reasons stated, this claim is denied.

(Dkt. 16, Ex. 3C, p. 323) (court's record citations omitted).

---

[11] Collins did not state in his postconviction motion that counsel should have raised misidentification or the allegedly inconsistent statements. A federal habeas petitioner cannot raise new facts not presented to the state court in support of an ineffective assistance claim. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Weeks v. Jones*, 26 F.3d 1030, 1044-46 (11th Cir. 1994). Regardless, these allegations afford Collins no relief.

Stone testified to police department protocol that required the test firing of firearms seized by the police department.  (Dkt. 16, Ex. 1B, p. 153.)  Stone testified that Officer Paulina test fired the revolver recovered from Moise's possession. (*Id.*, p. 150.)  Paulina did not testify at trial. During his closing argument, defense counsel argued that the jury should consider the omission of Paulina's testimony and what he characterized as the State's lack of direct evidence about the firearm and the test firing:

> [COUNSEL]: So I, therefore, ask you to consider the lack of evidence. Officer Paulina was not here.  Officer Paulina did not testify that the gun was test fired.  All that was testified about, that was the procedure that should or should not have been followed.  But there is no proof that if was.  I, therefore, ask you in considering your verdict to find that there was no firearm used because no firearm was proven in this courtroom today.

(*Id*, p. 173.)

The record supports the state court's decision.  In light of the testimony that Franks decisively identified Collins, he does not demonstrate that counsel was ineffective for failing to present a misidentification defense.[12]  Nor does he show that counsel was ineffective for failing to argue the "inconsistency in statements made against him."  Collins has not shown any materially inconsistent statements by State witnesses and does not now demonstrate a reasonable probability that arguing such statements would have changed the outcome of trial by overcoming the State's evidence of his identity.  Finally, Collins fails to establish that, under these circumstances, counsel was ineffective for focusing on a lack of evidence about the firearm. Collins would have been subject to a lesser penalty had the jury found

---

[12] Collins alleges that counsel could have "used the newly discovered testimony of Mr. Mohammad to show that Petitioner wasn't even [sic] the store." (Dkt. 1, p. 30.)  For the reasons addressed in Ground Two, however, Collins does not show that counsel was ineffective for failing to call Youssouf.

that he committed the attempted robbery without a firearm.[13]

Collins has not demonstrated that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claim.  He is not entitled to relief on Ground Six.

**Ground Seven**

Collins alleges that trial counsel was ineffective for failing to advise him that he had the right to wear civilian clothing at trial.  Collins states that, as a result, the jury viewed him wearing jail clothing.  The state court rejected this claim of ineffective assistance:

> The Defendant alleges that counsel was ineffective for failing to advise the Defendant that he had a right to wear civilian clothing during trial.  The Defendant asserts that he was dressed in jail-issued blue shirt and pants that had "MAX" printed on the back of the shirt and down the leg of the pants.  The Defendant also asserts that during trial, the co-defendant was brought in also wearing jail-issued clothing, which was prejudicial to the Defendant.  The Defendant claims that he was ignorant of his right to wear civilian clothes, and had counsel informed as much, he would not have worn jail-issued clothing and the jury would not have been swayed into rendering a verdict of guilty.
>
> A defendant cannot be compelled to stand trial in identifiable prison clothing because it impairs his presumption of innocence.  See Pineda v. State, 805 So.2d 116, 117 (Fla. 4th DCA 2002).  However, the Defendant does not assert that he was compelled to wear prison clothing, nor does he allege that he requested from his counsel that he be allowed to wear civilian clothing for trial.  Therefore, the Defendant was not misadvised or compelled to wear something that he did not want to wear.
>
> Further, Defendant has failed to show that had he been wearing civilian clothing, the outcome would have been different.  Defendant was identified by the victim as the perpetrator.  The gun brandished at the victim was found in the possession of Defendant's codefendant who was also identified by the Victim.  Thus, Defendant has failed to show a reasonable probability that the outcome of his trial would have been different.

---

[13] Attempted robbery with a firearm is a second degree felony.  §§ 777.04(4)(c), 812.13(2)(a)  Fla. Stat.  Thus, Collins was subject to, and received, a thirty-year sentence as a habitual felony offender. § 775.084(4)(a)2.  Attempted robbery *without* a firearm is a third degree felony.  §§ 777.04(4)(d), 812.13(2)(c), Fla. Stat. Had he been convicted of this offense, Collins would have faced a ten-year sentence as a habitual felony offender.  § 775.084(4)(a)3., Fla. Stat.

(Dkt. 16, Ex. 3C, pp. 323-24) (court's record citations omitted).

Requiring a criminal defendant to appear at trial in jail clothing violates the Fourteenth Amendment. *See United States v. Johnson*, 634 Fed. App'x 227, 229 (11th Cir. 2015) ("It is a Fourteenth Amendment violation to compel a criminal defendant to stand trial before a jury in identifiable prison garb."). While Collins does not allege he was forced to wear jail clothes, "[t]he failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." *Estelle v. Williams*, 425 U.S. 501, 512-13 (1976).

Even assuming that counsel was ineffective for failing to advise Collins of his entitlement to wear civilian clothing, however, Collins fails to show prejudice. Given the evidence against him, as described in the state court's order, Collins has not shown a reasonable probability that the outcome of the proceeding would have been different had he worn civilian clothing. *See, e.g., Johnson*, 634 Fed. App'x at 229 ("[O]verwhelming evidence of a defendant's guilt renders the error occasioned by a defendant's appearance in prison clothes at trial harmless beyond a reasonable doubt.").

Because Collins has not demonstrated that the state court's decision was contrary to or an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts, he is not entitled to relief on Ground Seven.

**Grounds Eight and Nine**

In Ground Eight, Collins argues that trial counsel was ineffective for failing to object when the State introduced a firearm into evidence without first laying a proper foundation. The state court denied this allegation:

The Defendant alleges that counsel was ineffective for failing to object

to the State's introduction of the firearm into evidence when the proper foundation was not laid.  The Defendant allege that the victim's identification of the gun was not sufficient and was merely speculation based on an engraving on the gun.  The Defendant also alleges that Officer Bradshaw was not qualified to identify the gun because he was not involved in the investigation and he gave false testimony.  The Defendant further contends that but for counsel's ineffective assistance, the Court would have granted a mistrial based on these "exigent circumstances."

The State argues, and this Court agrees, that counsel had no basis upon which to object, and therefore, cannot be deemed ineffective for failing to do so.  See Schoenwetter, 46 So. 3d at 546.  To begin with, the State correctly asserts that the gun was not entered into evidence solely because the victim identified it as the gun used in the attempted robbery.  Rather, the gun was also entered into evidence because Officer Bradshaw identified it as the gun recovered during the arrest of Mr. Moise, the Defendant's accomplice in the charged offense.  As previously addressed in the body of this Order, the Defendant is incorrect in his contentions that Officer Bradshaw had nothing to do with the investigation, was not qualified to identify the gun, and gave false testimony at trial.  Officer Bradshaw participated in the arrest and therefore, was able to identify the gun as the weapon recovered from Mr. Moise.

Furthermore, the victim identified Mr. Moise as the Defendant's accomplice during the attempted robbery.  Additionally, any allegation that the victim's identification of the engraving on the gun is speculative and is refuted by the record.  The record clearly demonstrates that the victim testified that she "did not really look at anything but the barrel of the gun," and the engraving of the gun in question was, in fact, on the barrel of the gun.  Though the victim could not remember the color of the handle of the gun, her testimony established that there were no differences between the gun presented in Court, and the gun used in the attempted robbery.  As such, the Defendant has failed to establish how he was prejudiced by counsel's failure to object, and as counsel cannot be deemed ineffective for failing to make a meritless objection, this claim is accordingly denied.

(Dkt. 16, Ex. 3C, pp. 324-25) (court's record citations omitted).

In Ground Nine, Collins asserts that trial counsel was ineffective for failing to object to the State introducing collateral crimes evidence without providing the defense notice of its intent to do so.  The state court rejected this assertion when Collins raised it in his postconviction motion:

The Defendant alleges that counsel was ineffective for failing to object

to the State's lack of notice of intent to introduce the gun as collateral crime evidence.  The Defendant alleges that the State presented counsel with discovery but it did not contain any information about a seized firearm.  The Defendant further asserts that the State is required to present information of Williams Rule evidence no later than 10 days before trial pursuant to Florida Statute § 90.404(2)(b).  The Defendant contends that there is a reasonable probability that the jury would have returned a verdict of not guilty had the collateral crime evidence not been admitted at trial.

The State contends and this Court agrees that the Defendant's claim has no merit.  To begin with, as the State correctly points out, the Defendant repeatedly refers to Florida Statute § 90.404(2)(a), which relates to evidence presented in child molestation cases, and is therefore, inapplicable to the instant case.  Moreover, the record demonstrates that the gun was not introduced as collateral evidence, but was introduced because it was identified by the victim as the one used by the Defendant in the attempted robbery.  Therefore, the Defendant is incorrect in his assertion that the gun was introduced in relation to other crimes not charged in the instant case.

Additionally, the State argues, and this Court agrees that the Acknowledgment of Additional Tangible Evidence filed by the State on April 20, 2007, contained Officer Paulina's report, which indicated that a revolver was seized and taken into evidence.  Therefore, the Defendant's assertion that there was no information concerning a seized firearm is also refuted by the record.  Counsel would have had no basis upon which to object, and as previously stated, counsel cannot be deemed ineffective on these grounds.  The Defendant also alleges trial court error as it relates to the introduction of the gun as collateral evidence.  The Defendant should note that claims of trial court error should have been brought on direct appeal and are therefore, procedurally barred from being raised in a motion for postconviction relief.  See Sampson v. State, 845 So. 2d 271 (Fla. 2d DCA 2003).  In light of the evidence presented against him at trial, the Defendant has failed to establish prejudice and has failed to demonstrate that the outcome of the proceedings would have been different had counsel performed as he now suggests.  For the reasons stated, this claim is also denied.

(Dkt. 16, Ex. 3C, pp. 325-26) (court's record citations omitted).

The introduction of evidence during a state court trial, and any objections that may be lodged in response, are matters of state law.  Accordingly, deference must be afforded to the state court's determination in both of Collins' claims that counsel had no basis to object when the State moved to introduce the firearm at trial.  *See, e.g., Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court

already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on [state law]–the objection would have been overruled. . . . Therefore, [petitioner's counsel] was not ineffective for failing to make that objection."). *See also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus.").

Collins does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying this claim.  He is not entitled to relief on Ground Eight or Ground Nine.

**Ground Ten**

Collins claims that trial counsel was ineffective for failing to object to the court's sentence as vindictive.  Collins stated when he filed this federal habeas petition that he challenged the conviction entered in state court case number CRC07-03321CFANO.  (Dkt. 1, p. 1.)  His first nine claims clearly involve this conviction.  Collins states for the first time in his reply that Ground Ten involves convictions entered in a different state court case. Specifically, he refers to his sentence of 50 years in prison for drug-related convictions entered in case number CRC06-22477CFANO.  (Dkt. 22, pp. 19-23.)

Collins already filed a federal habeas petition in case number 8:12-cv-2292-T-

30TBM challenging the convictions entered in state court case number CRC06-22477CFANO. That habeas petition has been considered and denied. Collins may not bring another challenge to the state court convictions entered in case number CRC06-22477CFANO without first obtaining permission from the Eleventh Circuit Court of Appeals to file a second or successive habeas petition. *See* 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."). Collins does not represent, nor is there any indication from the record, that such permission has been granted. Accordingly, this Court is without jurisdiction to consider the claim raised in Ground Ten.

Any claims not specifically addressed herein have been determined to be without merit.

It is **ORDERED** that:

1. Collins' petition for writ of habeas corpus (Dkt. 1) is **DENIED**. The Clerk is directed to enter judgment against Collins and to close this case.

2. Collins is not entitled to a certificate of appealability (COA). A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(1). A district court must first issue a COA. *Id.* "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Collins "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S.

473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  Collins has not made this showing.  Finally, because Collins is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on March 27, 2017.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Jermaine Collins
Counsel of Record